UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK                    ☆FILED☆

                                                2020 JUN -3  AM 11: 29

NANCY F. MANZ          Plaintiff

V                                               U.S. ...

EILEEN GIAGRASSO, MANUELA IGNACIO,
PATRICE KELLY, MARY GOLDEN,                     Case No. 2:18-cv-05171 (JFB)(AYS)

LORI RAFFANIELLO, RICHARD MURPHY

And SOUTH NASSAU COMMUNITY HOSPITAL

                Defendants


Dear Honorable Judge Seybert,


I, Nancy F. Manz, the pro se Plaintiff in case 2:18-cv-05171, as so ordered by this court and within the designated date that this court generously granted to me of June 5,2020, am submitting my

Opposition to the Defendants, Eileen Giagrasso, Manuela Ignacio, Patrice Kelly, Mary Golden, Lori Raffaniello, Richard Murphy and South Nassau Community Hospitals' Motion to Dismiss my claims in the aforementioned case that is before this court.

I am most grateful to the court for its careful evaluation of the facts and issues in the presentation.

Respectfully, I offer this truthful document for your consideration.


Nancy F. Manz

Pro se    Plaintiff

65 Greystone Road

Rockville Centre, New York   11570

Home 516-766-6562

Cell 516-425-8647

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK


NANCY F. MANZ      Plaintiff

V

EILEEN GIAGRASSO, MANUELLA IGNACIO

PATRICE KELLY, MARY GOLDEN,         Case  No 2:18-cv-05171 (JFB)(AYS)

LORI RAFFANIELLO, RICHARD MURPHY

and SOUTH NASSAU COMMUNITIES HOSPITAL

           Defendants


OPPOSITION TO THE DEFENDANTS MOTION TO DISMISS


I, Nancy F. Manz, the Pro Se Plaintiff in the above noted case, who resides at 65 Greystone Road in Rockville Centre, New York 11570, respectfully am asking the court to deny the Defendants, Eileen Giagrasso, Manuella Ignacio, Patrice Kelly, Mary Golden, Lori Raffaniello , Richard Murphy and SNCHs' Motion To Dismiss the aforementioned case, which was presented to this court (Doc 45-47) on Febuary 6,2020.

The Defendants motion, as this document will show, is woefully inadequate to support the motion to dismiss that they have requested from the court.

This opposition to their motion will show,

1. The motion to dismiss based on a null and void Separation Agreement is inadequate for dismissal.
2. The motion to dismiss my claims which will show the Defendants violation of 18 US FWA 2511 is inadequate for dismissal.
3. The motion to dismiss my claims which show violation of NY LL 741, which protects health care workers, who are mandated by law to report negligent actions to patients, is inadequate for dismissal

4. The Defendants production to the court (Doc 47-2) of a document, which the Defendants knew was a false claim, will be shown to support a claim of Defamation and Libel, and in that regard gives the court no basis to dismiss my claims.

2:18-cv-05171

I am respectfully submitting this document to the court to support my opposition to dismiss case 2:18-cv-05171 (JFB)(AYS)

I thank the court for the careful consideration of the facts that will be presented.

Nancy F. Manz   pro se Plaintiff

2

2:18-cv- 05171

INDEX

I  LETTER TO THE COURT

II OPPOSITION TO THE DEFENDANTS MOTION TO

   DISMISS MY CLAIMS......................................................................................................pg.1, 2, 2(a), 2(b)

III OPPOSITION TO THE DEFENDANTS MOTION TO

   DISMISS MY CLAIMS AURGUMENT POINT I..................................................................pg. 3

IV OPPOSITION TO THE DEFENDANTS MOTION TO

   DISMISS MY CLAIMS REGARDING SEPARATION AGREEMENT....................................pg. 4, 5, 6

V OPPOSITION TO THE DEFENDANTS MOTION TO

  DISMISS MY CLAIMS UNDER VIOLATION OF 18 US 2511,

   FEDERAL WIRETAPPING ACT (FWA)...............................................................................pg. 7, 8, 9, 10, 11

VI OPPOSITION TO THE DEFENDANTS MOTION TO
   DISMISS MY CLAIMS UNDER VIOLATION OF NY LL 741.................................................pg. 12,13,14,15,16

VII CONCLUSION STATEMENT...........................................................................................pg. 17

Index

2:18-cv-05171

LAWS CITED IN THIS DOCUMENT

NYLL 741...................................................................pg. 1, 3,12,13,14

18US 2511 (FWA)....................................................pg. 1, 3,7,8,10,11

18 US 2520 (FWA RELIEF)........................................pg. 3

HIPAA

45cfr 160,162 AND 164............................................pg. 6, 7, 10, 12,13,14,15

45CFR 160.306 .......................................................pg. 14, 15

NYLL Section 215......................................................pg. 14, 15

Defamation................................................................pg. 5

Libel..........................................................................pg. 5

NY Penal 250.5..........................................................pg. 5,7,10

US Citizens Right to Privacy........................................pg. 6

2(a)

2:18-cv-05171

TABLE OF AUTHORITIES

Tantaros v Fox News Network

LLC No 17cv2958, 2018 WL 2731268 (SDNY May, 18, 2018).........................................pg. 9

Epps v St, Mary's Hospital

802F.2d 412, 17 (11th Cir 1986).................................................................................... pg. 9

Mendez v Starwood Hotels WW 746 supp 2d 575.......................................................pg. 9

Briggs v American Air Filter Co Inc.

630 F.2d 414 (5th Cir 1980) ...........................Exhibit C....................................................pg. 10

Simmons v Southwest Bell Telephone

452 Supp 392 (W.D. Okla. 1978....................Exhibit C....................................................pg. 10

Deal v Spears

980 F.2d. 1153 (8th Cir 1992)..........................Exhibit C....................................................pg. 10

Williams v Poulos

11F. 3d 271 (4th Cir 1994)...............................Exhibit C....................................................pg. 10

Sanders v Robert Bosch Corp

38 F. 3d 736 (4th Cir 1994)...............................Exhibit C....................................................pg. 10

Pascale v Caroline Freight Carriers Corp

898 F Supp. 276 (D.N.J. 1995)..........................Exhibit C....................................................pg. 10

Byrne v Avery

327 Conn. A 550,554, 567-568............................................................................................pg. 12, 13

(2)(b)

2:18-cv-05171

OPPOSITION TO MOTION TO DISMISS ARGUMENT POINT 1

The Defendants in their Motion to Dismiss my claims (DOC 46 pg4) stated that my" Amended Complaint fails to state any claim upon which relief may be granted and must be dismissed as a matter of law.

This statement is inadequate to support the Defendants Motion to Dismiss my claims.

My Amended Complaint gives specific dates and evidence of violations of 18US 2511 which prohibits covert audio surveillance.

There is remedy in this law under 18US2520 which states

"A) the sum of actual damages suffered by the plaintiff and any profits made by violators as a result of the violation.

B) Statutory damages of whichever is greater of $100 for each day of violation or 10,000

My Amended Complaint gives specific factual evidence of the Defendants violation of NYLL741 against me.

The remedy under NYLL741 is

1. Reinstatement of a former employee to the SAME or to an equivalent position
2. Reinstatement of full fringe benefits and seniority rights
3. Back pay
4. Compensation for lost benefits
5. Recoupment of reasonable costs, disbursements and attorney fees

The Defendants have submitted an Exhibit to the court Exhibit B (DOC 47-2 pg id 263) that every single defendant knew was a false claim and falsely written in a matter of fraud and malice to harass, intimidate, defame and libel with the goal being that I would resign and the Defendants could continue their illegal behavior of secret, audio surveillance against employees, physicians, patients and patients families at SNCH.

In this regard, a judge or jury may award actual, punitive and/or actual damages.

To conclude my point, my Amended Complaint gives many avenues for relief and facts to support my claims.

I am respectfully asking the court to deny the Defendants Motion to Dismiss as stated in Doc 46 pg 4.

I thank the court for its consideration of this matter.

3

2:18-cv-05171

Opposition to motion to dismiss regarding Separation Agreement

The Separation Agreement that the Defendants presented to the court is null and void. (Doc 47-3) (Exhibit C)

1. On June 20, 2018 I was presented with a Separation Agreement in the office of Human Relations at SNCH by Mary Golden who told me that my position was terminated by layoff and for no cause.  I did not sign the document.
2. On June 21, 2018, I called the Putney Law Firm, as was stipulated in the contract, to clarify my concerns. I received no call back.
3. On Monday, June 24, I again called the Putney Law Firm. Again, my call was not returned.
4. On Tuesday, June 25, 2018, I received a call at my home from Mary Golden the Asst. Director of Human Resources at SNCH who told me that the Putney Law Firm asked her to inform me that the only way to communicate with them is through an attorney.
5. On June 28, 2018, at Ms. Golden and Ms Donnellys directive, I retained Mr. Ralph Somma esq to communicate my concerns to the Putney Law Firm.
6. On July 9, 2018, Mr. Somma sent a letter to Mr. Richard Murphy CEO at SNCH and the Putney Law Firm, on my behalf which illuminated my concerns.  Exhibit A
7. Between July 13 and forward, there were phone calls between the Firm and Mr Somma to find a fair settlement.
8. On August 2, Mr Somma felt that his communications with the Firm were positive to settle as he was expecting to here from Ms. Donnelly.
9. On August 3 the Separation Agreement was signed. However, when Mr Somma did not hear from the Firm as he expected, he informed me that the contract should be revoked, which was my right under the words in the Document p5 7(B) which states "In the event that Employee exercises his right to revoke during the 7 (day) period this Agreement shall be null and void and of no force and effect, and Employee shall receive none of the benefits hereunder."
10. Mr Somma, on or about August 6 was in communication with the Putney Law Firm and the Firm was aware that the contract was revoked.  Exhibit B

4

2:18-cv-05171

Mr Somma's main concern that he had brought to the Putney Firm's attention was that the contract has no "Meeting of the Minds" and its vagueness gave the Hospital too much favor. He made these specific points.

1. The professional rate in page 4 4.A of exh.C had no clarified monetary value.
2. The contract did not make provision for my call pay, which was half my salary and was mandated for me to serve.
3. The contract made no provision to pay me the unused, earned vacation time that was due me.
4. The contract made no provision to pay me for the unused sick time that I earned.
5. The Firm nor the Hospital made any overture of payment for the practice of illegal audio surveillance that was used against me in violation of FWA, 18US, NY Penal 250.5 and my Civil Right to Privacy.

Mr Somma's communication of these concerns were known to the Putney Firm (Exhbit 1) (Exhibit 2).

During the period between August 6 and September 13, despite frequent communications between Mr.Somma and the Firm, no meeting of the minds was attained and no severance was paid to me.

On September 13, 2018, I filed claims against the Defendants, as was my right.

On September 20, 2018 the Firm presented a revised Separation Agreement for Mr. Somma and my review. As the agreement offered did not address any of the aforementioned concerns, I decided to pursue my complaint in court.

In addition to the unsatisfied "meeting of the minds" these are other aspects of the Document that do not reach the standard of a legal contract

1. Page 5 (A) requires that "employee has at least 21 days to consider this agreement". 21 days would have been July 11, 2018 which is 2 days after Mr. Somma's letter was sent. The August 3 dated was beyond the date prescribed by the contract. The date of August 3 is not valid. In this regard the contract is null and void.

2. No severance was ever paid nor received by me. In this regard, the contract is null and void.

3. The Putney Law Firm used disparaging information from my employment file (some of which will be proven in this court as LIBEL) in an Age Discrimination Suit brought by M. Somma on my behalf, in the spring of 2019. This is proof that the Hospital and the Firm were not bound by any valid contract with me.

4 Mr. Richard Murphys signature on the contract is neither dated nor notarized.

5

2:18 - cv - 05171

The nonnotarized signature of Mr. Murphy in this case will also be evidence that Mr. Murphy may not have been aware that he was terminating a direct care Registered Nurse in violation of the layoff criteria.

Evidence that Mary Golden and Pat Kelly selected me for layoff so that the illegal audio surveillance that they were involved in would not be exposed will be presented in court.


In light of these aforementioned facts, I am respectfully asking the court to deny the Defendants Motion to Dismiss and allow this case, which will ensure the Right To Privacy to employees, will ensure employees, physicians patients and visitors right not to be illegally audio surveilled under US 18 FWA , and most importantly uphold HIPAA and the obligation to report negligent actions by health care workers.


I thank this court for the careful consideration of this request


Nancy F Manz  pro se Plaintiff

6

2:18-cv-05171

EXHIBIT A and B to support the null and void "Separation Agreement"

The Law Office of

# RALPH A. SOMMA

175 West Main Street, Suite One
Babylon, NY 11702

*2:18-cv-05171*

Tel.: (631) 587-1699
Fax: (631) 587-1760

E-mail: rsomma@sommafirm.com
www.sommafirm.com

Richard J. Murphy
President and Chief Executive Officer
South Nassau Communities Hospital
One Healthy Way
Oceanside, NY 11572

July 9, 2018

Re:   Nancy Manz

Dear Mr. Murphy:

This office has been retained by Nancy Manz regarding the unlawful and retaliatory termination of her employment with South Nassau Communities Hospital ("SNCH").

Ms. Manz is a registered nurse who began employment with SNCH in 1991. She continually performed the duties to which she was assigned – most recently as a Critical Care PACU Nurse – in an exemplary manner until she was notified of the termination of her employment effective June 20, 2018 in the form of a Separation Agreement and General Release, the terms of which have been reviewed by this office.

It is clear that Ms. Manz' employment was terminated under circumstances that give rise to claims under the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 290, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* and Title III of Omnibus Crime Control and Safe Street Acts of 1968, 18 U.S.C. §§ 2510-2521 ("Wiretap Act").

In that regard, in April this year, Ms. Manz met with Mary Goldin, Director of Human Resources and Lori Raffaniello Director of Patient Experience and SNCH Ethics Committee member to report her conclusion and present evidence demonstrating that members of SNCH management – specifically Eileen Gragrasso, Manusha Ignassio and Pat Kelly – had been engaged in unlawful audio surveillance of employees throughout the hospital. During the meeting, Ms. Manz presented to Ms. Goldin and Ms. Raffaniello copies of the applicable statues prohibiting such surveillance – the Federal Wiretap Act and the New York's Eavesdropping law, N.Y. Penal Law § 250.05.

My client's allegations and proof were neither denied nor refuted by Ms. Goldin or Ms. Raffaniello – who both thanked Ms. Manz for reporting the unlawful surveillance – nor by anyone else at SNCH at any time after the April meeting.

Apparently, however, SNCH took no action to abate this unlawful conduct. Instead, the hospital embarked on a course of conduct intended to retaliate against Ms. Manz for reporting the unlawful surveillance.

Thus, a mere three days after her initial report, Ms. Manz was summoned to SNCH Human Resources to answer to a bogus complaint concerning a patient for whom Ms. Manz had no responsibility. Approximately one month thereafter, Ms. Manz was presented with yet another complaint that was clearly contrived to substantiate a pretextual basis for her eventual removal.

*w Office of Ralph A. Somma*

Re: Nancy Manz
Page 2 of 2

2:18 - cv - 05171

That eventuality came to fruition on June 20 when she was presented with the aforementioned Separation and Release Agreement requiring that she waive and release SNCH from any and all claims.

In addition, upon further investigation, it has come to light that Ms. Manz is the only Operating Room Critical Care PACU Nurse, and one of the oldest, if not the oldest, nurse slated for layoff in her unit.

Finally, based upon the information we were provided concerning the layoffs implemented at SNCH, the Separation Agreement and General Release given to Ms. Manz does not comply with the Older Workers Benefit Protection Act in several respects. To the extent it was part of an exit incentive or other employment termination program offered to a group or class of employees, it fails to provide Ms. Manz 45 days to consider the agreement; it does not identify the class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and it does not disclose the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program. 29 U.S.C.A. § 626.

Based on the foregoing, we are prepared to file claims of discrimination, harassment and retaliation under the NYHRL, ADEA and the Wiretap Act. These claims would subject SNCH and those individuals personally responsible for the unlawful conduct detailed above to liability for the payment of compensatory and punitive damages in addition to Ms. Manz' attorneys' fees.

Prior to the institution of formal legal proceedings, my client has authorized this office to pursue a private and amicable resolution of the aforementioned claims. If I am not contacted by you or your representative by June 13, however, we will assume you are not interested in such a resolution and will proceed accordingly without further notice.

Finally, take notice of your obligation to preserve all information potentially relevant to my client's claims and to prevent the destruction, concealment or alteration of all such information, including but not limited to, any paper or electronic files and/or other data generated by and/or stored on your computers and storage media (e.g., hard disks, floppy disks, backup tapes, backup drives, portable storage devices), or any other electronic data, such as voice mail, that refer or relate to the subject matter of the above referenced matters or the employment of my client.

Sincerely,
THE LAW OFFICE OF RALPH A. SOMMA

*[signature]*

Ralph A. Somma
RAS/pc
*Via FedEx Overnight delivery*
cc: *Mary Ellen Donnelly, Esq. (via email: mdonnelly@putneylaw.com)*
    *client*

2:18-cv-05171

I apologize. He will get a revised Severance agreement from me and then I would like to speak about possible resolution. I've not forgotten you, just jammed up this week and brought my kids back to school last week

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Ralph Somma <rsomma@sommafirm.com>
Date: 8/30/18 11:48 AM (GMT-05:00)
To: Mary Ellen Donnelly <MDonnelly@putneylaw.com>
Subject: Re: South Nassau Communities Hospital - Nancy Manz

Ms. Donnelly,
I have not heard back from you regarding this matter.
Please advise.
Ralph

On Tue, Aug 21, 2018 at 3:17 PM, Ralph Somma <rsomma@sommafirm.com> wrote:
 Let me know after you've spoken with your client.
 I may be available Thursday afternoon.
 Thank you.

On Tue, Aug 21, 2018 at 3:08 PM, Mary Ellen Donnelly <MDonnelly@putneylaw.com> wrote:
 My client just returned from vacation today and I. Waiting to touch base with her.  Could we schedule something for Thursday?

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Ralph Somma <rsomma@sommafirm.com>
Date: 8/21/18 2:54 PM (GMT-05:00)
To: Mary Ellen Donnelly <MDonnelly@putneylaw.com>
Subject: Re: South Nassau Communities Hospital - Nancy Manz

Ms. Donnelly,
I would like to follow up our last discussion of August 13.
Please advise of your availability.
Thank you.
Ralph

On Mon, Aug 13, 2018 at 2:20 PM, Ralph Somma <rsomma@sommafirm.com> wrote:
 Mary Ellen,
 Per your request, attached is the severance and release agreement that was provided to Ms. Manz by SNCH.

2 818-cv-05171

OPPOSITION TO DEFENDANTS MOTION TO DISMISS MY CLAIMS UNDER 18US FWA 2511


FACTS TO SUPPORT MY OPPOSITION


The Defendants in their correspondence with the court have provided three different defenses of their actions.

1. In October, 2018, the Defendants claimed that they did not engage in secret audio surveillance or have knowledge that hospital employees were engaged in secret audio surveillance of me, other employees, physicians, patients and patients' family members in the PACU of SNCH.
2. In February, 2020 (Doc 45-47) the Defendants claimed that I did not prove that they engaged in secret audio surveillance of the aforementioned groups of persons.
3. In the same Document, the Defendants who denied the actions stated, told the court that despite their denial, they had the authority to take this illegal action against these aforementioned groups of people, including me, from the "business extension exemption of 18 US 2511.

The Defendant lack of clarity of their positions should concern the court. Therefore, in this regard alone, I would hope that the court would not dismiss my claims.


Further Facts

Under 18US 2511 Federal Wiretapping Act (FWA) it is a violation of this Federal Law to intercept conversation with an electronic devise. Furthermore, it is illegal to disclose what (conversations) was intercepted with another person.

NY Penal 250 strictly prohibits ANY audio surveillance without two party consent.

The Defendants gave no notification nor obtained ANY consent from me, employees, physicians (who are not employees) patients nor their families, that they were in an area exposed the audio surveillance which exposed private conversations unrelated to work, patients PHI, physicians discussions of patients unrelated to the PACU and most importantly, the oral transfer of care between an anesthesiologist and the PACU nurse which discloses a patients name, age, procedure and significant history, all of which is protected under HIPAA.


Additionally, as cited by the Defendants, who asked for more facts to support my claims, I offer these facts.

1. I was told by a coworker that there was a secret microphone that intercepts conversations in the PA system in the ceiling of the PACU.
2. I was told by a coworker that she witnessed Patrice Kelly listening to conversations, on an (electronic) devise in Ms. Kellys office, that originated in the PACU

7

2 : 18 - c v - 05171

3. Ms Ignacio told me that we could no longer play music (as was our previous practice) in the area of the front of the room (patient care areas A and C and the PACU desk) because it interferes with a "component" in the PA system in the ceiling of the PACU.
4. In a conversation with Ms. Ignacio, which was very complimentary to my work related performance, she laughed and stated "you know, We (nurse managers) Listen"
5. In a conversation with Ms. Ignacio with Kathy Malone (OS Manager) in attendance, Ms. Ignacio questioned me about a private conversation between me and two coworkers, which occurred when we were the only persons in the room. Both Ms. Ignacio and Ms Malone were aware that the conversations that they were disclosing to me were obtained by secret audio surveillance.
6. In yet another conversation with Ms Ignacio she stated that she heard two coworkers say "mean things".
7. Eileen Giagrasso made a statement to me about two coworkers, who had the same first common language stating " You know, I've heard them talking together in their language, you know that's not allowed"  I said nothing, but realized that she wanted me to validate her claim so that she could confront them
8. On March 29, 2018 in a meeting with Ms. Giagrasso and Ms. Ignacio, Ms. Giagrasso refered to a comment that was stated between me and a colleague on the morning of March 25,2018, that she stated that she "heard". (There was no one in the room)

Despite these facts, Ms Kelly, Ms Giagrasso and Ms Ignacio told this court that they did not engage in secret audio surveillance against me or any of the other groups of persons as stated in my claims.

My complaints states how all of these facts were presented to Mary Golden and Lori Raffineillo in a 90 minute meeting in Mary Goldens office of Human Resources on April 2, 2018.

Despite these facts, Mary Golden and Lori Raffinello denied to the court in October of 2018 that they were aware of employees at SNCH secretly listening to employees, physicians, patients and their families without notification or obtained consent from anyone.

On July 9, my attorney, Mr. Ralph Somma, sent a letter to Mr. Richard Murphy which illuminated the violations of the FWA by employees at SNCH and the retaliatory actions taken against me in violation of Federal Whistleblower act.

Mr. Murphy, in October 2018 denied knowledge of illegal audio surveillance at SNCH to this court.

These facts, I believe, support my claims to deny the Defendants Motion to Dismiss.

2 : 18 - c v - 0517)

The Defendants references to case law unrelated to the facts of this case is passim and inadequate to be considered for a motion to dismiss if they are not related to a hospital setting.

The specific reference to Tantaros v Fox News Network LLC, No 17-cv-2958,2018 WL 2731268 (S.D.N.Y May 18,2018, is most perplexing. This was a case of Sexual Harassment. My case has nothing to do with sexual harassment. The Defenses' audacious claim that a PACU is akin in any way to a Fox News floor should be dismissed by the court for its absurd irrelevance.

The reference to Epps v St. Mary's Hospital 802 F.2d 412, 17 (11th Cir. 1986) does not apply because it refers to two employees speaking on a hospital issued phone. While throughout this case the Defendants have referred to the facts as phone interception, my case clearly states that conversations were intercepted while I was speaking in a room, not into a hospital issued devise that I was aware of. In this regard the conclusions of Epps v St. Mary's should not be considered as a motion to dismiss.


The court may however want to refer to Mendez v Starwood Hotels WW. 746 supp 2d 575 where a jury found that a surveillance machine placed over an employees workstation, unknown to Mendez, for 8 days in order to observe him and capture evidence of harassment that he reported, was an "retaliatory action " by the employer which violated Mendez's Civil Rights under NY City Human Rights VII . The jury's award was so excessive for this 8 day action that Starwood returned to the court, while the new cases continued, no other court overturned the jury's finding.

9

2:18-cv-05171

II OPPOSITION TO MOTION TO DISMISS UNDER 18 US 2511 "BUSINESS EXTENSION EXEMPTION

The Defendants application of the "business extension exemption" in 18US 2511 to support a Motion to Dismiss my claim is woefully inadequate and should not be considered to grant their motion.

The "business extension exemption "may only be applied in regards to telephone monitoring and possibly listening on an extension line of a telephone. (Exhibit C)

The conclusions of Briggs V American Air Filter, (5th cir 1980), Simmons V Southwest Bell Telephone, Deal V Spears, Williams V Poulos (4th cir 1994) Sanders V Robert Bosch Corp. (1994) and Pascale V Carlina Freight Carriers, ALL support that the "business extension exemption" is exclusive to "standard telephone equipment".

A hidden microphone, that intercepts people's conversations (voice interceptions) in a room, is not related to phone conversations is not covered under the "business extension exemption" in any way.

The Defendants have insinuated to the court with their defense that their authority to covertly audio surveil employees, physicians, patients and patients families conversations without any notification nor informed consent to "assure appropriate patient care and interactions " is ,somehow, legal.

However, the facts show that this behavior by SNCH and some of its employees is in violation of 18US 2511, NY Penal250.5 and the HIPAA Privacy Act.

Therefore, the court should ask the Defendants these questions.

1. How does secret audio surveillance "ensure appropriate patient care?

2. Are ALL patients given this assurance by this method?

3. Which employees are entrusted with this surveillance. Or is it a communications company?

4. How is the patients PHI protected by this method?

5. Are the intercepted conversations recoded or encrypted?

6. How does this method work when there are 16 post op patients in the room?

7. How do the surrveillers distinguish between conversations that are work related and non-work related?

8. For what reason were employees never notified that they were working in a covertly surveilled area?

9. Did the Hospital obtain employees consent?

10. Why were physicians (non employees) secretly listened to?

11. Most importantly, why were patients not given the information that their conversations with their physicians and direct caretakers, which exposed their PHI, was being secretly intercepted in the PACU by unknown to them surveilles? Why was no informed consent obtained from patients?

2 : 18 - cv - 05171

Until these very important questions are addressed by the Defendants, I believe that the court should not grant the Defendants Motion to Dismiss my claims under FWA 18US2511.

I am respectfully asking the court to carefully consider all of these facts and to deny the Defendants Motion to Dismiss my claims under 18 US 2511 (FWA).

I thank the court for this consideration.

EXHIBIT C

Article which shows the case law which prove that the "business extension

Exemption" is not applicable to the actions of the Defendants

Search FindLaw

(https://lp.findlaw.com/)

Cases & Codes (https://caselaw.findlaw.com/)   Practice Management (https://practice.findlaw.com/)   Legal Technology (




FINDLAW (HTTPS://LP.FINDLAW.COM/)   /   CORPORATE COUNSEL (/)   /   LAW LIBRARY (HTTPS://CORPORATE.FINDLAW.COM/LAW-LIBRARY/)   /
CAN AN EMPLOYER MONITOR THE TELEPHONE CALLS OF AN EMPLOYEE WHO THE EMPLOYER BELIEVES IS REVEALING CONFIDENTIAL COMPANY TRADE SECRETS?

## Can an Employer Monitor the Telephone Calls of an Employee Who the Employer Believes is Revealing Confidential Company Trade Secrets?

*This article was edited and reviewed by FindLaw Attorney Writers (https://www.findlaw.com/company/our-team.html) | Last updated January 12, 2018*

Does an employer have the right to monitor telephone conversations of its employees if the employer believes its employees are revealing confidential information and/or trade secrets? The question must be reviewed under both Federal and State law. The article below attempts to provide guidelines to employers concerned with this issue.

**Federal Law**

The Federal Omnibus Crime Control and Safe Streets Act of 1968 (https://www.justice.gov/crt/omnibus-crime-control-and-safe-streets-act-1968-42-usc-3789d), also known as the Federal Wire Tapping Act (Hereinafter "Act"), prohibits interception of oral and electronic communications. See 18 U.S.C. §§ 2510 (https://codes.findlaw.com/us/title-18-crimes-and-criminal-procedure/18-usc-sect-2510.html)-2520. The statute was amended in 1986 to cover electronic communications, and amended again in 1994 to protect cordless telephone communications.

This Act creates criminal liability for any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." See 18 U.S.C. § 2511(1) (https://codes.findlaw.com/us/title-18-crimes-and-criminal-procedure/18-usc-sect-2511.html). The statute also makes it illegal to use any electronic, mechanical or other devices to intercept oral communications except under specified circumstances. Id. Under this Act it is also illegal to disclose or otherwise use the contexts of illegally intercepted communications. See 18 U.S.C. § 2515 (https://codes.findlaw.com/us/title-18-crimes-and-criminal-procedure/18-usc-sect-2515.html). Violations of the statutes are punishable by criminal and civil penalties, including punitive damages.

**No Violation Where Prior Consent Given**

However, the Act provides a potentially crucial exception for business employers. First, the Act provides that there is no violation where one of the parties (i.e. the employee) has given prior consent to have a communication intercepted. See 18 U.S.C. § 2511 (2)(d). Moreover, the courts have interpreted sections of the Act to exclude a company's extension telephones use "in the ordinary course of its business" from the definition of electronic, mechanical or other devices to intercept oral communications." See 18 U.S.C. § 2510 (4),(5).

**Business Extension Exception**

Stay up to date with the latest on the law!

Create an account to subscribe.

By submitting this form, you agree to FindLaw.com's terms (https://www.findlaw.com/company/findlaw-terms-of-service.html). We respect your privacy.

This site is protected by reCAPTCHA and the Google Privacy Policy (https://policies.google.com/privacy) and Terms of Service (https://policies.google.com/terms) apply.

Under the so-called "telephone extension" or "business extension" exception, if the interception of an oral communication is (1) made with interception equipment furnished to the employer by a communication services provider, and (2) made within the ordinary course of business, there is no interception as defined by the statute. Thus, a major issue arising from this exception is what falls into the ordinary course of business.

The monitoring of business calls is clearly within the ordinary course of business, and thus does not violate the federal Act. Yet, complications arise when personal conversations were monitored, and therefore could have been intercepted, as the statute defines the term. It is possible for an employer to defeat this claim by enacting a written policy that either clearly identifies monitored lines or expressly prohibits personal calls on monitored lines. This policy will also serve to reinforce the notion that the employee has a reduced expectation of privacy. Employers invoking this exception must also articulate a legitimate business interest in monitoring oral communications over the telephone. Courts that have addressed this issue analyze what constitutes a legitimate business interest and what type of surveillance is acceptable under the federal Act.

There are numerous court decisions addressing the "business extension" exception. Some of these court decisions find the "business extension" exception applicable and other decisions do not. In *James v. Newspaper Agency Corp.,* *(https://scholar.google.com/scholar_case?case=17684616399503853969&hl=en&as_sdt=6&as_vis=1&oi=scholarr)* 591 F. 2d 579 (10th Cir. 1979), the employer had monitoring equipment installed by the telephone company, and it informed its employees in writing that phone calls in certain departments (particularly those dealing with the public) would be monitored, both for quality control purposes and as some protection for employees from abusive calls. The 10th Circuit noted that the monitoring was not done surreptitiously, and ruled in favor of the employer, concluding that the business extension exception applied.

Prior Warning

In *Simmons v. Southwestern Bell Telephone Co (https://scholar.google.com/scholar_case?* *case=18009979693561959347&hl=en&as_sdt=6&as_vis=1&oi=scholarr),* 452 F. Supp. 392 (W.D. Okla. 1978) the employer had a written policy that certain specified telephone lines would be monitored for quality control of its employees. Additionally, the employer prohibited personal calls on those lines. An employee sued when he learned that his personal calls on these telephone lines had been monitored. The court ruled that the employer monitored these telephone lines in the ordinary course of business, and in so doing, the Court relied on defendant's policy against the use of these phones for personal calls. The Court emphasized that the employee had been warned about making personal calls on these lines and knew of other lines in the office that were not monitored. The Court concluded that the employer had a legitimate business interest and the continuous monitoring of these lines for quality control purposes was upheld.

Investigation of Prohibited Disclosure

In a case somewhat similar to the Simmon's Case, the 5th Circuit in *Briggs v. American Air Filter Co., Inc* *(https://scholar.google.com/scholar_case?case=4196764953784421816&hl=en&as_sdt=6&as_vis=1&oi=scholarr),* 630 F. 2d. 414 (5th Cir. 1980), held for the employer where it found that an employee's supervisor had particular suspicions that the employee was disclosing confidential information to a business competitor, had warned the employee not to disclose such information, and knew that a particular telephone call was with an agent of the competitor. The court held that it was within the "course of business" for the supervisor to listen to the conversation on an extension phone as long as the call involved the type of information he feared was being disclosed and the extension telephone extension used to monitor the call was made with interception equipment furnished to the employer by a communication services provider.

Stay up to date
with the latest on
the law!

Please enter your email address          Subscribe   ✕

By subscribing, you agree to our privacy policy and terms of service (https://www.findlaw.com/company/findlaw-terms-of-service.html). We respect your privacy (https://www.thomsonreuters.com/en/privacy-statement.html).

This site is protected by reCAPTCHA and the Google Privacy Policy (https://policies.google.com/privacy) and Terms of Service (https://policies.google.com/terms) apply.

Business Exception has Limitations

In *Watkins v. L. M. Berry & Co (https://scholar.google.com/scholar_case?* *case=11212446034094840663&hl=en&as_sdt=6&as_vis=1&oi=scholarr),* 704 F.2d 577 (11th Cir. 1983), the employer had a policy of monitoring employees sales calls. In this policy, however, personal calls of its employees were to be monitored except to the extent necessary to determine that the call was of a personal nature. The employee sued when he

discovered that the employer had monitored a call in which the employee discussed a job interview with a perspective employer. The court found that the interception was not in the ordinary course of the employer's business. The Court relied principally on the fact that the employee was an at-will employee and the employer had no legal interest in his future employment plans. The Court stressed that "in the ordinary course of business" cannot be extended to mean anything about which an employer is curious. The Court concluded that personal calls could not be intercepted in the ordinary course of business under the employers stated policy, except to the extent necessary to determine whether the call was personal or not. The Court distinguished this case from the holding in the Simmons case.

In _Deal v. Spears (https://scholar.google.com/scholar_case?case=9557959506878960246&hl=en&as_sdt=6&as_vis=1&oi=scholarr)_, 980 F.2d. 1153 (8th Cir. 1992) the 8th Circuit held that the employer violated the statute by tape recording and listening to all calls, including personal calls, even though the employer's suspicions of theft were a valid reason to monitor calls to the extent necessary to determine their nature.

Monitoring Equipment Must be Standard Telephone Equipment

The "business extension" exclusion also requires that the monitoring equipment used to monitor telephone calls be standard telephone related equipment supplied by the service provider for connection to the phone system. Recent decisions have excluded phone monitoring equipment that was not normal telephone equipment neither obtained, nor installed by a standard service provider.

In _Deal v. Spears_, the 8th Circuit did not uphold an employer's right to intercept employees telephone calls under the "business extension" exception when it found the employer purchased a recorder at Radio Shack, privately connected the recorder to an extension phone line to automatically recorded all conversations. Since the recorder installed did not qualify as normal telephone equipment, the exclusion to the Act did not apply.

In _Williams v. Poulos (https://scholar.google.com/scholar_case?case=6658251295134360186&hl=en&as_sdt=6&as_vis=1&oi=scholarr)_, 11 F.3d 271 (4th Cir. 1994), the 1st Circuit determined that a custom-made monitoring system consisting of "alligator clips attached to a microphone cable at one end" and an interface connecting [a] microphone cable to a VCR and video camera on the other cannot be considered telephone equipment.

In _Sanders v. Robert Bosch Corp (https://scholar.google.com/scholar_case?case=6801526326463236785&hl=en&as_sdt=6&as_vis=1&oi=scholarr)_, 38 F. 3d 736 (4th Cir. 1994), the 4th Circuit found that a reel-to-reel tape recorder that continuously recorded certain telephone lines did not qualify for the exclusion, since it did not further the plant's communication system.

Finally, in _Pascale v. Carolina Freight Carriers Corp (https://scholar.google.com/scholar_case?case=11458755326625890149&hl=en&as_sdt=6&as_vis=1&oi=scholarr)_, 898 F.Supp. 276 (D.N.J. 1995), the District Court in New Jersey held that tape recorders that the employer installed to intercept employees' telephone conversations were not "telephone instruments or equipment" for purposes of the "business extension" exception under the Act. Citing Poulos and Sanders, the District Court found that the tape recorders did not further the employer's communications system in that they did not have a positive impact on efficiency, clarity, or cost of the system.

New Jersey State Law

New Jersey law offers statutory wiretapping protection similar to the federal Act. The New Jersey Wire Tapping and Electronic Surveillance Control Act (https://codes.findlaw.com/nj/title-2a-administration-of-civil-and-criminal-justice/nj-st-sect-2a-156a-24.html) prohibits the interception of wire and oral communications, and provides both criminal and civil remedies, including punitive damages and attorney's fees. See N.J.S.A. 2A:156A-24, et seq. Although the state Act has exceptions similar to those found in the Federal Act, New Jersey state courts have not yet addressed the issue of telephone monitoring in the private employer-employee setting. The cases interpreting the state Act focus on criminal actions. Nevertheless, the state statute

largely follows the federal statute. See *Poulos*, 898 F. Supp. at 281 (citing *State v. Minter (https://scholar.google.com/scholar_case?case=6543140132324866557&hl=en&as_sdt=6&as_vis=1&oi=scholarr)*, 116 N.J. 269 (1989)).

The aforementioned cases provide guidance to an employer who contemplates monitoring the telephone conversations of its employees under the "business exception". While this article serves as an oversimplified guideline, these employers should consult with legal counsel for a more thorough analysis of the employers own situation.



× 
the answer company™
THOMSON REUTERS®

**REACH MORE SPANISH-SPEAKING CLIENTS**

If your law firm would like to reach this growing demographic, we can help.

LEARN MORE

BACK TO TOP

## Research

Cases & Codes (https://caselaw.findlaw.com/)

Opinion Summaries (https://caselaw.findlaw.com/summary.html)

Sample Business Contracts (https://corporate.findlaw.com/contracts/)

Research An Attorney or Law Firm (https://lawyers.findlaw.com/)

Forms (https://forms.lp.findlaw.com/)

Reference (https://reference.findlaw.com/)

Legal Commentary (https://supreme.findlaw.com/legal-commentary.html)

## Practice

Law Technology (https://technology.findlaw.com/)

Law Practice Management (https://practice.findlaw.com/)

Law Firm Marketing Services (https://www.lawyermarketing.com)

Corporate Counsel (https://corporate.findlaw.com/)

JusticeMail (https://www.justicemail.com)

Jobs & Careers (https://careers.findlaw.com/)

## About Us

## Social

Facebook (https://www.facebook.com/FindLawConsumers)

YouTube (https://www.youtube.com/watch?v=WQiNbzazOhw)

Twitter (https://twitter.com/findlawconsumer)

Pinterest (https://pinterest.com/findlawconsumer/)

Newsletters (https://newsletters.findlaw.com/)

## Law Firm Marketing

Attorney Websites (https://www.lawyermarketing.com/services/mobile-friendly-websites/?ct_primary_campaign_source=701130000027LuU&ct_source=Website&ct_sc

Online Advertising (https://www.lawyermarketing.com/services/integrated-marketing-solutions/?ct_primary_campaign_source=701130000027LuU&ct_source=Website&ct_sc

Buy a Directory Profile (https://store.lawyermarketing.com)

Marketing Resources

White Papers (https://www.lawyermarketing.com/white-papers/?ct_primary_campaign_source=701130000027LuU&ct_source=Website&ct_sc

**Stay up to date with the latest on the law!**

Please enter your email address        Subscribe    ×

By submitting this form, you agree to FindLaw.com's terms (https://www.lawyermarketing.com/webcasts/). We respect your privacy (https://www.thomsonreuters.com/en/privacy-statement.html).

This site is protected by reCAPTCHA and the Google Privacy Policy (https://policies.google.com/privacy) and Terms of Service (https://policies.google.com/terms) apply.

Company History (https://www.findlaw.com/company/company-history/findlaw-corporate-information-press-company-background.html)

Who We Are (https://www.findlaw.com/company/company-history/findlaw-com-about-us.html)

Privacy (https://www.thomsonreuters.com/en/privacy-statement.html)

Terms (https://www.findlaw.com/company/findlaw-terms-of-service.html)

Disclaimer (https://www.findlaw.com/company/disclaimer.html)

Advertising (https://www.findlaw.com/company/media-kit.html)

Jobs (https://www.findlaw.com/company/employment/employment.html)

Cookies (//info.evidon.com/pub_info/15540?v=1&nt=0&nw=false)

Do Not Sell My Info (https://privacyportal-cdn.onetrust.com/dsarwebform/dbf5ae8a-0a6a-4f4b-b527-7f94d0de6bbc/5dc91c0f-f1b7-4b6e-9d42-76043adaf72d.html)

---

# FindLaw.



Copyright © 2020, Thomson Reuters. All rights reserved.

---

**Stay up to date with the latest on the law!**

Please enter your email address     Subscribe    ✕

By submitting this form, you agree to FindLaw.com's terms (https://www.findlaw.com/company/findlaw-terms-of-service.html). We respect your privacy (https://www.thomsonreuters.com/en/privacy-statement.html).

This site is protected by reCAPTCHA and the Google Privacy Policy (https://policies.google.com/privacy) and Terms of Service (https://policies.google.com/terms) apply.

---

2 : 18 — cv — 05171

OPPOSITION TO THE MOTION TO DISMISS MY CLAIMS UNDER NY LABOR LAW 741

The Defendants Motion to Dismiss my claims under NY LL 741 is woefully inadequate and does not, in any way support this motion. (doc45-47)

The Defendants were negligent to the PACU patients of SNCH when they habitually allowed employed "surveillers" to intercept conversations in the PACU of patients with their physicians and direct care nurses at SNCH , which exposed the patients' PHI, without informed consent, in blatant violation of the HIPAA Privacy Standard, known as the "Minimum Necessary" policy which states

"A covered entity must make reasonable efforts to use, disclose and request only the minimum amount of PHI needed to accomplish the intended purpose of the use, disclosure."

On April 2, 2018, as stated in my complaint, I reported to Defendants, Mary Golden and Lori Raffinello, that the HIPAA privacy of the PACU patients was breached by the Defendants, Patrice Kelly, Eileen Giagrasso, Manuella Ignacio and possibly others, secret, illegal, unwarranted audio surveillance , and the subsequent exposure of EVERY PACU patient's PHI. This action of this report is a covered action under 741 because a breach of HIPAA Privacy is an act of NEGLIGENCE.

As a Registered Nurse, it is the duty of my position and bound by law to report negligent actions and illegal (violation of law) activity against the patients that I am entrusted to serve.

The insinuation by the Defendants, who are well educated to the Standards of HIPAA Protection awarded to patients, that the responsibility to uphold HIPAA Law is somehow not a "protected action" under NYLL741 lacks any kind of credibility and gives absolutely no support for this court to grant a Motion to Dismiss.

In Byrne v Avery, the Supreme Court of Connecticut clarifies my claims when it ruled

"recognizing a cause of action for the breach of duty of confidentiality in the physician-patient relationship by the disclosure of medical information is not barred (52-1460) by (the Connecticut law) or HIPAA and that public policy, as viewed in a majority of other juristictions that have addressed the issue supports that recognition" 327Conn. A550. The court also stated that it has inherent authority "...to create new causes of action Id.at 554

Also

" ...to the extent it has become the common practice for Connecticut health care providers to follow the procedures required under HIPAA in rendering services to their patients, HIPAA and its implementing regulations may be utilized to inform the standards of care applicable to such claims arising from allegations of negligence in the disclosure of patients medical records " (PHI)

2 : 18 - cv - 05171

327 Conn.at 556-557, quoting 314 Conn. At 458-459. The court concluded that:

"a duty of confidentiality arises from the physician-patient relationship that unauthorized disclosure of confidential information obtained in the course of that relationship for the purpose of treatment gives rise to a cause of action sounding in tort against the health care provider, unless the disclosure is otherwise allowed by law" 327 Conn. At 567-568.

I believe that this court owes a duty to explore the Defendants actions of breach of HIPAA and uphold the very important, obligation to report that NY LL741 was written to support.

For all of these reasons, I believe that the Defendants have not met the standards for a motion to dismiss my claim under NY LL 741.

I respectfully ask the court to deny the Defendants Motion to Dismiss.

2 : 18 - cv - 05171

NY LABOR LAW 741 PROHIBITS RETALIATION

The Defendants have told the court (DOC 46, Page 10)

"the temporal proximity between Plaintiffs reporting and the Hospital-wide layoff more than two months later does not establish a casual connection indicative of retaliation"

This statement to the court is inadequate, misleading and is not supported by the facts stated in my complaint. I believe that it should not be considered for a Motion to Dismiss my claims.

My complaint specifically stated that the Hospital BEGAN retaliatory actions against me on April 5,2018, which was three days after I reported illegal, secret, audio surveillance of me, employees, physicians, patients and their families, without notification nor informed consent from anyone and in violation of the HIPAA Privacy awarded to the patients of SNCH.

1.  On April 5, 2018, I was called to a meeting in the Human Resources office of SNCH where the Defendants, Mary Golden, Patrice Kelly and Manuella Ignacio brought false claims against me, in a style of interrogation that lasted one hour, that I have come to believe may have been secretly videotaped by the department. This interrogation was an attempt to harass and intimidate me with the goal being that I would resign and they could continue the illegal activity that they were all involved in. I told them that the claims were false and returned to my assigned patients in the PACU.
2.  The second act of retaliation occurred on June 1, 2018. I was presented with a Disciplinary Action (Exhibit B, DOC 47-2) that was a false claim authored by Eileen Giagrasso and Patrice Kelly to defame and libel me. This document was approved of by Mary Golden, who had knowledge that it was a false claim. It was signed by Manuella Ignacio and Caroline Shulman (OS Manager) who knew that it was a false claim.
    I did not sign it because it was a false claim and an act of retaliation for my report of April 2, 2018.
3.  The third act of retaliation occurred on June 20, 2018 when I was called away from my patient assignment, brought to the Human Resources office and told that my position was terminated for no cause, by Mary Golden. My selection for layoff was made by Mary Golden and Patrice Kelly in retaliation for reporting the illegal behavior that they were involved in. My case will show that my positon did not meet the criteria for layoff and violated the procedure for layoff selection published in the SNCH Employee Handbook.

These three actions of retaliation were directly related to my report. These actions, by the Defendants are in violation of NYLL741, NYLL Section 215 and 45 CFR 160.306 which prohibits an employer from retaliating against an employee for reporting a breach of HIPAA Privacy.

14

2:18-cv-05171

These facts support my claims and I believe that the court should deny the Defendants Motion to Dismiss my claims under NYLL741.

In conclusion, if the court finds that reporting a violation of HIPAA Privacy against the patients of SNCH is not a protected action under NYLL741, I am respectfully asking the court to stay its dismissal of my claims and allow me to make a motion to amend my complaint to reflect that the Defendants actions against me are prohibited under NYLL Section 215 and 45 CFR 160.306 which protects employees who report violations of HIPAA Privacy and illegal labor practice of unconsented secret audio surveillance.

I respectfully ask the court to deny the Defendants Motion to Dismiss my claims under NYLL741.

I respectfully ask to court to uphold NYLL741 and in that action, protect the public health and safety and support health care workers who are mandated by law and the duty of their position to report negligent actions against the patients that they serve.

I am grateful to the court for its very careful consideration of these very important issues that are before it.

2:18-cv-05171

I respectfully am addressing the court to consider that if the court finds that the reporting of a breach of HIPAA Privacy, which seriously protects the health and safety of the Public, is not a protected action under NY LL 741, the health care workers of NY State will have no state law which protects them when they report violations of HIPAA Privacy, that they are mandated, by law, to report.

Therefore, that action, by the court, will weaken the duty of health care workers to report the illegal actions of employers who violate the HIPAA Privacy awarded to the patients of NY State.

2: 18 - cv - 05171

CONCLUSION

I have sincerely attempted to follow the procedures of the court in this document and that being stated, I apologize to the court for any procedural missteps that it may find.

The Defendants, however, have misrepresented the facts of this case.

1. They produced a "Separation Agreement" (DOC 47-3 p 264 EXHIBIT C) that they knew was null and void.
2. They produced a Disciplinary Action (DOC 47-2 EXHIBIT B p262) that every single Defendant KNEW was a false claim of Defamation and Libel.
3. They told the court that the "normal operations" of the Hospital encompassed their aberrant behavior of covert audio surveillance of me, employees, physicians, patients and patients families, without notification nor informed consent, which exposed every PACU patients PHI, in violation of the HIPAA Privacy Act was "covered" by the "business extension exemption " of 18 US 2511. This "exemption" clearly gives the Hospital and the Defendants no authority to "wiretap" any of the aforementioned groups of persons.

I am respectfully and earnestly asking the court to carefully consider the facts of this document and deny the Defendants Motion to Dismiss my claims.

I am grateful to the court for all of the considerations that I am requesting.

Thank you.

Nancy F Manz

Pro se Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

*Amended Complaint*

**Complaint for Violation of Civil Rights**
(Non-Prisoner Complaint)

*Nancy F Manz*

_____ *plaintiff*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. *2:18-cv-05171 (JFB) (AYS*

*(to be filled in by the Clerk's Office)*

Jury Trial: ☐ Yes   ☐ No
*(check one)*

-against-

*Eileen Giangrasso, Manuella Estacio, Ignacio Patricia Kelly, Mary Golden, Richard Murphy Lori Raffienello, and South Nassau Community Hospital*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

*Defendants.*

NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in *forma pauperis*.



*2:18-cv-05171*
*(JFB)(AYS)*

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach
additional pages if needed.

| | |
|---|---|
| Name | Nancy F. Manz |
| Street Address | 65 Greystone Road |
| City and County | Rockville Centre          Nassau |
| State and Zip Code | New York          11570 |
| Telephone Number | 516  766-6562 |
| E-mail Address | nancy.manz55@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint,
whether the defendant is an individual, a government agency, an organization, or
a corporation.  For an individual defendant, include the person's job or title (if
known) and check whether you are bringing this complaint against them in their
individual capacity or official capacity, or both.  Attach additional pages if
needed.

Defendant No. 1

| | |
|---|---|
| Name | Eileen Giangrasso |
| Job or Title (if known) | Nurse Manager  Pre/Post-op |
| Street Address | One Healthy Way |
| City and County | Oceanside          Nassau |
| State and Zip Code | New York          11574 |
| Telephone Number | (516) 632 - 3000 |
| E-mail Address (if known) | |

2:18-cv-05171
(JFB)(AyS)

Defendant No. 2

Name: MAnuella Ignacio
Job or Title (if known): Nurse Manager PACU
Street Address: One Healthy Way
City and County: Oceanside          NASSAU
State and Zip Code: NewyorK          11570
Telephone Number: (516) 632-3000
E-mail Address (if known):

Defendant No. 3

Name: Patrice Kelly
Job or Title (if known): Operative Services Supervisor
Street Address: One Healthy Way
City and County: Oceanside          NASSAU
State and Zip Code: Newyork          11571
Telephone Number: (516) 632-3000
E-mail Address (if known):

Defendant No. 4

Name: MAry Golden
Job or Title (if known): Director of Human Resources
Street Address: One Healthy Way
City and County: Oceanside          NASSAU
State and Zip Code: New york          11571
Telephone Number: (516) 632-3000
E-mail Address (if known):

3

2:18-cv-05171
(JFB)(AYS)

Defendant #5

Richard Murphy
President CEO South Nassau Community Hospital
One Healthy Way
Oceanside, New York 11571 (Nassau)
516 632-3000


Defendant 6

Lori Raffiniello
Director Patient Experience / Ethics Committee Member
One Healthy Way
Oceanside, New York 11571 (Nassau)
516 632-3000


Defendant 7

South Nassau Community Hospital (SNCH)
One Healthy Way
Oceanside, New York 11571 (Nassau)
516 632-3000


3(a)

*2:18-cv-05171*
*(JFB)(AYS)*

**II.**   **Basis for Jurisdiction**

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

**A.**   Are you bringing suit against *(check all that apply)*:

☐   State or local officials (a § 1983 claim)

☐   Federal officials (a *Bivens* claim)

**B.**   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

*US 18 Wiretapping ( NYS Penal 250.5 Audio Surveilling)*
*US Whistleblower Laws( NY State Lab. Law*
*WP Act 741) ie HiPAA*

**C.**   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_____

_____

_____

**D.**   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

_____

_____

_____

4

2:18-cv-05171

(JFB)(AYS)

III.   **Statement of Claim**

State as briefly as possible the facts of your case.  Describe how each defendant was
personally involved in the alleged wrongful action, along with the dates and locations of
all relevant events.  You may wish to include further details such as the names of other
persons involved in the events giving rise to your claims.  Do not cite any cases or
statutes.  If more than one claim is asserted, number each claim and write a short and
plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

South Nassau Community Hospital
Oceanside, NY

B.   What date and approximate time did the events giving rise to your claim(s) occur?

Sunday March 25. 2018  @  9am - 3pm
Monday April 2. 2018 @ 9am - 10³⁰am
Thursday April 5. 2018 3pm, June 1. 2018 3pm
June 20. 2018 3pm

C.   What are the facts underlying your claim(s)?  *(For example:  What happened to
you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

On March 27, 2018, I became aware through conversation
that Eileen Giangrasso, on Sunday March 25 listened to
my conversations and listened to a Doctor, who was
giving a telephone Report of an operation post operatively
to a patients family. This revelation alarmed me
and upset me. I knew that this was illegal and I
suspected that this was a HIPAA violation. She listened
on an electronic device that was not known to anyone
in the room.
On April 2. 2018 at 9am until 10³⁰am. I met with
Mary Golden and Lori Raffiniello, who represented
herself to me as a member of the SNCH Ethics
Committee.

2:18-cv-05171 (JFB)(AYS)

III

CPR.

At the onset of the meeting, I showed them a copy of the law,
NYS 18 wiretapping and NYS Penal 250.5 Audio Surveillance/
eavesdropping (a class E Felony)

At the meeting, it was discussed, that what I was about to tell them
was a "Whistleblowing Event", as this Audio Surveillance/Eavesdropping
of me and others, including a doctors telephone conversation with
a patients family, may not only be a crime, a felony, but a
violation of HIPAA Laws.

At the meeting, 'I gave Mary and Joe, many instances where by
this Audio Surveillance was used by Patric Kelly, Manuela Franco
and Eileen Giragosso when by they listened to employees
conversations, confiscated those employees with words that
they may have said, out of context, for the purpose of
harassment, intimidating, and insurance cases, forcing the
resignation of said employees.

I gave them evidence that this behaviour was not only a crime,
and a felony, but in many instances, escalated a historic work
environment, as people were accused of saying things, that
they may not have really meant today.

Moreover, in regards to HIPAA, these actions of Eavesdropping,
may be found to be in violation of patient/doctor
priviledge and the privacy afforded to patients in the
hospital, especially in this instance, whereby Eileen
Giragosso became aware, by listening to a patients
underlying diagnosis.

2:18 - cv - 05171 (JFB) (AYS)

III
C
P3

At the end of the 90 minute meeting, they both thanked me for my report and assured me that my identity was secured by them. They also assured me, that these allegations would be investigated immediately. Lori stated to me "you saw something, you said something and that is what the hospital wants".

To my knowledge, these allegations were never investigated and it has come to my recent knowledge, that despite this suit, Audio Surveillance of employees has continued in my department (PACU) by some of these defendants.

On April 5, At a meeting with Mary Golden, Patrice Kelley and Manuella Ignacio, I was accused of allegations that they all knew was falsly written, denied by me and uncorroborated by any witness.

This was the first act of Retaliation for my report of April 2, 2018.

On June 1, 2018 Manuella Ignacio and Caroline Shulman, presented to me A formal Disciplinary Action, Approved of by Mary Golden that was solely based on 2 Patient Satisfactory Surveys that they knew were written with false language, vehemently denied by me and uncorroborated by any witness.

This was the second Act of retaliation for Reporting crimes, Felony and HIPAA violations at SNCH

2.18-cv-05171

(JS)(AYS)

I.II  c  (p4)

On June 20, my Civil Rights were violated when I was terminated by layoff, which was approved of by Richard Murphy, Mary Golden and Patrice Kelly, despite the fact that my position did not meet the criteria of layoff.

This was the defendants third Act of Retaliation in violation of HiPAA Reporting and Whistleblower Protection Act

In amending my claims. I am now holding South Nassau Community Hospital as a co-conspirator in these violations of my Civil Rights and HiPAA.

p5 (c)

2:18-cv-05171
(JBF)(AYS)

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and
state what medical treatment, if any, you required and did or did not receive.

_____

_____

_____

_____

_____

_____

_____

_____

## V.   Relief

State briefly what you want the court to do for you.   Make no legal arguments. Do not
cite any cases or statutes.  If requesting money damages, include the amounts of any
actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis
for these claims.

Damages for being Audio Surveilled
Damages for Retaliation for Reporting a Crime,
a Felony and HiPAA Violations
Damages for loss of income for being Fired
for Reporting crimes, Felony and HiPAA violations
Damages for Defamation and Libel by the
Defendants.
Damages for ending my career.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an
improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the
cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for
extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or discovery; and (4) the
complaint otherwise complies with the requirements of Rule 11.

2:18 - cv - 05171
(JFB) (AYS)

**A.**   **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _March 22_, 20_19_

Signature of Plaintiff _____

Printed Name of Plaintiff ___Nancy F. Manz_____